May it please the Court, I'm Richard H. Mays from Little Rock. I represent the plaintiffs in the District Court and the appellates here. This is an important case. I'm sure you hear that from most of the lawyers who appear before you. This is important particularly in the area of the National Environmental Policy Act litigation. Counsel, just a preliminary question came to me reading through. That is, since this was denied, the project preceded, has preceded, is there any concern for mootness in terms of how far the project has gone? What relief can be obtained at this point from the litigation? The project is about 60 or 65 percent completed as I understand it based on what the Department of Transportation had on their website yesterday. The relief can still be granted. There is relief to be granted. What would that be? Well, the Court could order the Department to commence an environmental assessment to determine the information that we believe is required under the National Environmental Policy Act and to make provision in the alignment of the highway. The highway is, in terms of the roadbed, as I understand it, is fairly well along. I think that they could structure the travel lanes of the roadbed so that the public could use it while they're completing their environmental assessment. There also could be an analysis of mitigation issues that could be done, litigation projects or procedures that could be done to lessen any adverse environmental impacts that might be disclosed by the environmental assessment. That's the problem with this is that they, in my opinion, misused the categorical exemption. They started the project. It's now approximately halfway through or a little bit more and they did not do a proper environmental assessment of the project. They misused the categorical exceptions. But the project can be managed so that the public can use it under its current configuration and current development while they are doing an environmental assessment. The traffic problem probably wouldn't be any worse than it is right now, maybe better. There's plenty of cases that allow the court to enjoin a project, even though a project has been completed, it allows the courts to order the defendant or the developer of the mitigating actions to correct or to lessen any environmental impacts that should have been protected. What are we here to address? It seems what's been appealed was the denial of the preliminary injunction. So what are the specific issues you want to raise to us that are not different than the issues that the district court addressed? The specific issues that we want to address are the fact that the categorical exemption or exclusion that the department relied upon was not applicable to this project. These categorical exclusions have been used by the Arkansas Department of Transportation in numerous other projects. They have other projects that are planned where they claim they're going to be using categorical exemptions, and they're not applicable. They're misreading the categorical exclusion. Does it matter that you are appealing a TRO versus a preliminary injunction? When we got to the court, it was basically the court treated it, I believe, as a preliminary injunction. It was called a temporary restraining order when we started out, but I don't think it makes any difference either way. As I understand it, under 28 U.S. Code 1292, it could cover any interlocutory decision. It seems like the court sort of started off as one animal. The court conflated it, but at the end of the day, what you call it is really not as important as what it did. I agree with that. The exemptions that are in this case are found in 23 CFR section 771.117. For convenience, I'm going to refer to that in the future as section .117. There are two things I want to point out, too, that these categorical exclusions are exceptions to the general rule under the National Environmental Policy Act that a government agency that proposes to take federal action are required to do an analysis, either an environmental assessment or an environmental impact statement, of that proposed action before they undertake it. And these categorical exclusions are relatively new animals. They're not really contemplated under NEPA, but they came in this Council of Environmental Qualities, allowed agencies to develop categorical exclusions to cover routine matters and routine projects that had very little impact on the environment and that were customarily and frequently encountered, such as the Corps of Engineers nationwide permit, for example. And they're not intended to be applied to projects that have a major federal impact. The first section that's involved here in the categorical exclusion is subsection A of reg.117, which says that categorical exclusions are, and it defines it, are actions that do not involve significant environmental impacts, and especially those that do not involve significant air, noise, or water quality impacts or do not have significant impacts on travel patterns. Well, this project is a widening of I-630 that runs right through the middle of Little Rock Interstate. It has been a three-lane highway since it was built in each direction, a six-lane highway. They're adding at least one lane to each side, which would make it an eight-lane highway. And where there is an area between entrance ramps and exit ramps, they will also add another lane to connect those entrance ramps and the exit ramps. So in some places, it's going to be a 10-lane highway. Those lanes are 12 feet in width. There's a shoulder of 10 feet, and then there's what is called a safe zone of 30 feet on the side of that. That's what the dimensions of this project are going to be, and it covers approximately two-and-a-half miles of interstate highway that's the major, perhaps the major east-west corridor. It'll be like something going into the Los Angeles airport from the north. I beg your pardon? Well, it'll be like going into the Los Angeles airport from the north, about 10 lanes of traffic on each side. I will take your word for that, Your Honor. I haven't been there lately. Well, maybe not quite that bad. It is a major undertaking. It's costing $90 million to build this $2.5 million project. How much? $90 million. There's a case I've cited in the brief, West v. Department of Transportation. It's a Ninth Circuit case, but it's quite similar to this case here, and it involves a categorical exclusion. It's 206 Fed 3rd 920. What was the name of it again? West v. Department of Transportation. The one that I want to really focus on besides the subsection A of Reg.117 that defines categorical exclusions and limits it to those that don't have impacts on travel patterns or water quality or noise and air impacts, the other section is Section C of that regulation in which it gives specific examples of actions that meet the criteria for the categorical exclusion. If you read, there's approximately 30 or so of those examples, and if you read through them, they're all very non-intrusive examples such as utility installations or actions that don't lead directly to construction. Counsel, you're into your rebuttal, but I'd like for you to answer one additional question, and then you can continue or you can reserve your time. Thank you, Your Honor. Let me just ask you, what would you point to as the best thing for us to look at to determine that the district court's injunctive relief was in error? The subsection C that I was referring to limits the one that the categorical exception that the department used was number 22 under C, and it excludes, specifically excludes portions of the right-of-way that have not been disturbed or that are not maintained for transportation purposes. They are not in the operational right-of-way. The department and the Federal Highway Administration have defined operational right-of-way here as the entire right-of-way that they have title to, but that right-of-way is between 220 and 400 feet. The categorical exclusion that they're using only allows them to use this exclusion if they stay within the operational right-of-way. The word operational is key here because it's the portion of the right-of-way that has not been disturbed and that is not being used, and the Federal Register noticed that this particular section of the exemption was promulgated under in 2014 specifically says that a project within the operational right-of-way that requires the creation of new clear zones or extension of clear zones beyond what already exists would not qualify for this categorical exclusion. Thank you. I'll reserve the rest of my time. Thank you, Mr. Mays. Mr. Braybender? Thank you, May. It pleases the Court. My name is Alan Braybender. I'm with the Department of Justice and I'm here on behalf of the Federal Defendants. I'm splitting time today with Ms. Rita Looney, who represents the State Defendants. First and foremost, this Court lacks appellate jurisdiction because plaintiffs appeal from the denial of a temporary restraining order, which is not an appealable order. But unless the Court has any questions about the government's jurisdictional argument, I will move on to address the appeal today as if it were a denial of a preliminary injunction. So the plaintiffs are approaching this case as if it were here on summary judgment. It is not. It is here on the denial of, at most, a preliminary injunction. And the Supreme Court has made clear that a preliminary injunction is an extraordinary and drastic remedy that should rarely be issued. And it can only be issued if the plaintiff shows four factors, a likelihood of success, a likelihood of irreparable harm, a balance of harms that favors injunctive relief, and a public interest that does as well. Now, plaintiffs have failed entirely to brief two of the required factors, the balance of harm and public interest. And that alone requires this Court to affirm Judge Moody. With respect to the third factor, the plaintiffs, who don't even live in the project area, have not shown a likelihood of irreparable harm to their interests without an injunction. In fact, in their opening brief, plaintiffs rely on a presumption of irreparable harm in NEPA cases. But in Monsanto, the Supreme Court made clear that such a presumption cannot be given. So the plaintiffs retreat in their reply brief in the face of conflicting Supreme Court precedent. And they ask this Court to reverse Judge Moody based on what they call a showing of a possibility of irreparable harm. Now, the problem there is that in Winter versus NRDC, the Supreme Court made clear that the possibility of irreparable harm is not good enough. They need actual concrete harm that is likely to be irreparable without an injunction. And even if they could show actual concrete harm to the environment in general, that's still not good enough. And Friends of the Earth v. Laidlaw, the Supreme Court made clear that harm to the environment in general is not the inquiry. The inquiry is harm to the plaintiff's interest in the environment. And that is where an acknowledgment in the reply brief comes into play. At page 9 of their reply brief, plaintiffs acknowledge that they do not live in the area potentially affected by noise. In other words, the plaintiff's interests are not threatened with irreparable harm. That takes noise impacts entirely off the table when analyzing injunctive relief. Same too with air quality impacts. The plaintiffs do not live next to the highway. They raise concerns about air quality for people who do live next to the highway, but they don't tie those concerns to their own interests. So what we have here is plaintiffs failed entirely to address two of the four required factors, and they made an utterly deficient showing on the third factor. Now, even on the fourth factor, likelihood of success on the merits, plaintiffs bring their claims under the National Environmental Policy Act, NEPA. But the agencies here have fulfilled their obligations under NEPA through two categorical exclusions. The first categorical exclusion is that the I-630 project falls within the terms of a memorandum of agreement between the state and federal highway agencies. Notably, the plaintiffs do not even challenge that categorical exclusion. And because of that, this court doesn't even need to address the second categorical exclusion, which is that the project falls within the existing operational right-of-way. And make no mistake about it- But you kind of addressed the argument there about the width and the actual, what the operational right-of-way actually means in terms of dimensions. Well, in terms of dimensions, it doesn't matter. Because how the statute and how the regulation defines operational right-of-way is by areas. The plaintiff's argument is that it only goes to the extent of the clear zone. The clear zone is the area beyond the shoulder where errant vehicles could recover. But the plain language of both the statute and the regulation extend beyond the clear zone to areas maintained for mitigation or for landscaping purposes. And that's what we're talking about here. The I-630 project is widening into areas maintained for mitigation or for landscaping. And I would refer this court to testimony to this effect at pages 312 to 314 of the appellate's appendix. And Judge Moody also made a finding in this regard based on the testimony before him and based on his own experience in driving in this portion of Little Rock. And Judge Moody's finding can be found at 434 of the appendix. And plaintiffs have not shown that finding is clear error. And finally, oh, actually, I see I'm eating into my colleague's time. So I will yield my remaining time. Or is this my colleague's time? No. No. Okay. Then I will continue on. Finally, there are no unusual circumstances here. No significant air quality impacts or noise impacts that would make the use of a categorical exclusion improper. With respect to noise, the plaintiffs rely on a document at page 38 of the appendix where there is a box checked for significant noise impacts. Now, what the court needs to understand and what Judge Moody understood well is that this project was done, this document was done at the very beginning of the project, right? It was because of this that the agency undertook a very thorough noise study, which is in the government appendix, the first 60 pages or so. And as a result of that study, then, the agencies planned the project in such a way with noise barriers and other features to bring any noise levels below the threshold of significance. So you can see in the final noise report, the conclusion of the agencies at page 18 of the government appendix is that there will be no substantial increase in sound levels. And with respect to air quality, this is a small project of only about two miles that is intended to reduce congestion in the Little Rock area. And by reducing congestion, traffic congestion, it means there will be fewer cars idling on this segment up by 630, and it's the idling that actually causes air quality concerns. So by reducing congestion, what this project is in fact doing is assisting in air quality. It's making the air quality better. And air quality generally isn't a concern in the Little Rock area in any event. And I would refer the court to pages 225, 314, 331, and 364 of the government's appendix for some testimony about air quality impacts. And with that, unless the court has any additional questions, I will yield the remaining time. Back to your earlier argument about what is on page nine of the reply briefs that initiates the plaintiff's case? What is it? I'm trying to look at page nine to see what... Sure, they admit and they acknowledge that they do not live in the area potentially affected by noise. Okay, thank you. And there's also some testimony in that regard as well at pages 193 and 209 in the appendix. Okay. Thank you. Thank you, Mr. Bradburn. Ms. Looney? May it please this honorable court? It's my pleasure and privilege to be here representing RDOT. I am Rita Looney. I also represent the other state defendants in this matter. The district court properly weighed the four factors that were articulated by the United States Supreme Court in Winter's case, which we have cited in our brief and which the court cited extensively in his order. What is before you today is to determine whether or not the court abused its discretion in denying the preliminary injunction, or as it was originally called, a TRO. And I submit to you that in looking at the preliminary injunction, that is an extraordinary remedy. And it occurred to me this week as I was preparing for this argument, we lawyers just, you know, throw around those terms. They're legal terms. We think of a preliminary injunction, temporary restraining order. But what is so extraordinary about a preliminary injunction? And why is it extraordinary? And why do the plaintiffs have to prove something before they are given that remedy? And it's because it is a remedy before they really prove their case. And in this case, the plaintiffs proved nothing at the district court level as it relates to the granting of a preliminary injunction and looking at those four factors. What I would like to focus on in my time before the court today is that public interest factor and the harm and the weighing of the factors that the court did. Do you agree with the federal government's position that that issue is essentially waived because of the lack of briefing on the part of the appellant? I do. The failure to even mention it in their opening brief, those two factors, and then in their reply brief, the appellants have attempted to tell this court that they don't have to the district court may know specific finding on those two factors is just not correct. And I do believe that the federal government, the defendants with whom we have a co-defense here, your honors, they are correct and we are correct in telling you that they waived any argument on that subject. What did the district court say about the data phase factors? Did the district court feel as though the plaintiffs had raised them or satisfied? No. In fact, the district court cited extensively Winters versus Natural Resources, which recognizes the data phase factors. And Winters was also a case in which it was a NEPA challenge. And in that case, and in this case as well, it turned on the public harm, specifically addressing the public interest. In the Winters case, it had to do with use of sonar training for the Navy. And here, in addressing those factors, the district court, not only do we believe that the plaintiffs here have waived that challenge to the district court's conclusion, but the district court stated that even if the plaintiffs had made a minimal showing, that the balance tips in favor of the defendants. There was no consideration to the public interest that the plaintiffs brought before the court. And the public interest that the department and that the federal defendants have in pursuing the construction, it tips strongly in favor of the DOT, just as in Winters. Even if the plaintiffs had demonstrated, which they did not, a likelihood of irreparable harm, such harm was outweighed by the public interest in the completion of the project. This project, as Mr. Mace has correctly stated, is a project in the middle of the city of Little Rock. And it is a widening project that qualified for the categorical exclusion under the NEPA process. This court should dismiss this appeal because it really is an appeal from a request for a preliminary, excuse me, a temporary restraining order. Plaintiffs knew about this project for over seven years before they filed their motion. They filed their motion on the eve of the removal of an overpass. And it's clear from the pleadings and the arguments at the hearing below that they were seeking to prevent the demolition of that overpass because they believed that traffic was going to be diverted through the city of Little Rock throughout the duration of the project. And that was a misunderstanding of the project. And they sought a temporary restraining order to stop it so that the traffic would not be diverted. They were wrong. The court denied that. And the court went ahead and weighed all of the factors, finding that completion of the categorical exclusion was in the public interest. The court properly made an independent finding of the balance of harms. The court found that the public would be served with the completion of the project, but the public would be harmed, including the cost of the contractor, which would be adopted or the Arkansas Department of Transportation would be bound to pay that contractor to demobilize his forces and then to remobilize them. We would be subject to contract costs for delay for road user fees. And all of those costs would be borne by the department and then essentially borne by the public as taxpayers for this project. It would also be against the public's interest to delay construction for the safety concerns of the traveling public. And for those reasons, the court, in balancing all of the factors and in finding that the public interest was weighed in favor of the department proceeding with the construction, denied the TRO or preliminary injunction, and he did not abuse his discretion in doing so, but in fact made factual findings that are based on the record before him and based on the weighing of the appropriate Supreme Court factors as articulated in the Winters case. I did have a question, and that had to do with, you know, I know that you folks want to argue that this is a temporary restraining order that's being appealed from, but, you know, Judge Moody's order is not a picture of plain drafting. I mean, he starts off saying, before me is a temporary restraining order, and he gets to the last sentence and he says, therefore, the request for injunctive relief is in all things denied. And so, I mean, and he did go through all the analysis. I mean, is it really fair for us just to say, you know, at this point that the judge was kind of ambiguous, but you asked for a temporary restraining order and an injunction, and the judge says he's going to decide the temporary restraining order, but then in the relief section says, yeah, I'm denying injunctive relief. I mean, that seems a bit kind of harsh. Honestly, perhaps it is harsh so that this Court can choose instead, instead of dismissing the appeal because they are appealing from a non-appealable order as a denial of a temporary restraining order. We would request that this Court affirm the order denying the preliminary injunction based on the factors and the weighing of the interest as articulated in the judge's order. I'm done, I'm not saying anything more. Thank you, Ms. Looney. Thank you. Mr. Mays. I think it's been noteworthy that in the presentations that have been made by the Defendant's Counsel, they didn't say anything appreciable about the categorical exemption that they relied upon to start this whole process to begin with. These categorical exceptions are exceptions to the general rule that when you undertake a major federal project such as this, that you need to go out and do an environmental assessment at a minimum to determine whether an environmental impact statement is required. And if it's not, then you can prepare a finding of no significant impact and the case can go on from there. They didn't even do that. They didn't even do a decent evaluation internally to determine whether there were going to be any air impacts. They did do a noise study because there apparently had been a lot of complaints from people about noise from the highway, existing highway. They didn't do any alternatives analysis. They didn't do any direct, indirect, or cumulative impact analysis, nothing at all. Just a noise study. Now if reducing congestion is the purpose of this, they're not going to achieve it because the real purpose of this is to expand the highway so that it will increase the capacity from where it is now, which is approximately 115,000 cars a day. When they finish this, the design capacity would be over 140,000 cars per day. And history and experience has shown that if you build a major highway with big, lots of lanes to take care of capacity, to take care of congestion, that eventually fills up very soon. The court based its decision on the interpretation of this categorical exemption. The court said that if we had shown that there were irreparable harm, he would have granted the injunction. If you read the, he indicates that in the opinion. So we believe that we proved that the categorical exclusion was improperly applied. That's demonstrated by the testimony of the witnesses from the department and from the Federal Highway Administration. And we submit that the issue of the injunction, the court erred in failing to grant the preliminary injunction based upon the misreading of the categorical exclusion by the state and by the Federal Highway Administration. Thank you, Mr. Mays. Thank you also, counsel, for the federal government, the state, Mr. Brabender and Ms. Looney. Court appreciates all counsel's presence before the court today and the argument you've provided to us and the briefing which you've submitted. We'll take your case under advisement. Thank you.